IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge R. Brooke Jackson

Civil Action No 16-cv-03032-RBJ

TAYLOR CHRISTIAN PROFITA,

    Plaintiff,

v.

THE REGENTS OF THE UNIVERSITY OF COLORADO,
THE UNIVERSITY OF COLORADO HEALTH SCIENCES CENTER, a/k/a University of Colorado Denver/Anschutz Medical Campus,
JOHN J. REILLY, JR, M.D. in his official capacity as Dean of the University of Colorado Health Sciences Center,

    Defendants.

---

ORDER

---

This matter is before the Court on defendants' motion to dismiss. ECF No. 18. For the reasons below, the Court GRANTS that motion and dismisses plaintiff Taylor Profita's suit with prejudice.

**I. FACTS**

Plaintiff Taylor Profita is a former student at the University of Colorado School of Medicine ("the University"). Compl., ECF No. 13, at ¶13. By all indications, prior to the events giving rise to this suit, Mr. Profita was a successful student. *Id.* at ¶¶14–15. However, in the fall of 2011 plaintiff was placed on academic probation after failing two clinical rotations in what

was his fourth year of study.[1] *Id.* at ¶¶18–20. He alleges that the reason for his failing these two courses was worsening depression, anxiety, and sleep disturbances. *Id.* at ¶17. These conditions appear to be a result of what plaintiff alleges is underlying Major Depressive Disorder ("MDD"), Unspecified Anxiety Disorder ("UAD"), chronic insomnia/sleep apnea, and hypothyroidism. *Id.* at ¶9.

After failing those rotations, plaintiff received a letter from the University explaining to him that he could return to the school in academic good standing if he retook and passed those courses. *Id.* at ¶21. However, the letter also notified plaintiff that the school's Student Promotions Committee had voted to require him to undergo an evaluation by the Colorado Physicians Health Program prior to his return. *Id.* at ¶24. Plaintiff subsequently received a psychiatric evaluation per the University's request, which found that plaintiff has "symptoms that would suggest a mood syndrome . . . disabling anxiety disorder . . . [and] psychotic disorder." *Id.* at ¶25.

Plaintiff denies these symptoms. *See, e.g.*, *id.* at ¶¶27, 29. Instead, he explains that the doctor who evaluated him did not recognize or understand his previous diagnoses, including those for MDD and UAD. *Id.* at ¶27. In any event, after his psychiatric evaluation plaintiff resumed his studies, reenrolling in one of the two clinical rotations he had earlier failed. *Id.* at ¶29. He subsequently failed again. *Id.* After this second failure, the University dismissed plaintiff from the school for "unsatisfactory academic performance" per the school's dismissal policy. *Id.* at ¶33. That policy allegedly states, however, that while the final decision of dismissal for this reason resides with the Dean of the University, "exceptions may be made on the basis of particular circumstances." *Id.* at ¶37.

---

[1] The clinics plaintiff failed were the last two third-year clinical rotations he had to complete. ECF No. 1, at ¶18. Allegedly due to scheduling conflicts, plaintiff began these clinics in what was his fourth year at the University. *See id.*

2

Plaintiff alleges that after his dismissal from school he began working on his psychological issues with professional help. *Id.* at ¶38. He contends that he has improved his symptoms greatly. *See id.* at ¶44. Desiring the opportunity to return to school to finish his degree, plaintiff sent the University a letter in September of 2016 requesting that he be readmitted and granted credits for the work he already successfully completed. *Id.* at ¶39. The University denied his request. *Id.* at ¶52. It nevertheless notified plaintiff that it was also University policy to allow dismissed students to reapply as new students to start school afresh as first-year medical students. *Id.* at ¶54.

Procedural History

Plaintiff rejected the University's offer to reapply as a new student, choosing instead to file suit against the school, Dr. John Reilly (the school's dean), and the University regents in this Court on December 12, 2016. *See generally id.* In his complaint, plaintiff alleges that by denying him the opportunity to reenroll at the University where he left off, defendants failed to "reasonably accommodate" his "disability" in violation of several provisions of Title II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. ¶ 12132, *et seq. See id.* at ¶¶55–92.[2] He asks that this Court declare that defendants violated Title II by refusing to readmit him, and subsequently enjoin them from continuing to deny him that opportunity. *See id.* A few weeks after plaintiff filed suit, defendants moved to dismiss plaintiff's complaint on January 26, 2017. ECF No. 18. Defendants' motion has been fully briefed and is ripe for review.

---

[2] Plaintiff also cites portions of Title I and Title III of the ADA. *See, e.g., id.* at ¶91(citing 42 U.S.C. § 12112(b)(5)(A) (Title I discrimination) and 42 U.S.C. § 12182(b)(2)(A)(ii) (Title III discrimination)). The Court assumes that plaintiff cites these provisions as a means of conveying that he seeks to hold defendants liable for discrimination by failing to make a reasonable accommodation, rather than as separate claims in of themselves since plaintiff is not an employee of defendants (Title I) and defendants are not private entities (Title III).

## II. STANDARD OF REVIEW

To survive a 12(b)(6) motion to dismiss, the complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A plausible claim is a claim that "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). While the Court must accept the well-pleaded allegations of the complaint as true and construe them in the light most favorable to the plaintiff, *Robbins v. Wilkie*, 300 F.3d 1208, 1210 (10th Cir. 2002), conclusory allegations are not entitled to be presumed true, *Iqbal*, 556 U.S. at 681. However, so long as the plaintiff offers sufficient factual allegations such that the right to relief is raised above the speculative level, he has met the threshold pleading standard. *See, e.g.*, *Twombly*, 550 U.S. at 556; *Bryson v. Gonzales*, 534 F.3d 1282, 1286 (10th Cir. 2008).

## III. ANALYSIS

Defendants contend that by requesting that the University readmit him as a fourth-year medical student, the relief plaintiff requested and now seeks here amounts to "excusal" for his prior poor academic performance. ECF No. 18 at 4. They subsequently argue that his claim for readmission must be dismissed because a request for such relief has been rejected as a "reasonable accommodation" by the Tenth Circuit in other ADA contexts. *Id.* Plaintiff responds that he is not asking for defendants to retroactively excuse his past performance. Pl.'s Resp., ECF No. 20, at 2. Rather, he argues that his request was for defendants to grant him a variance per the terms of University's dismissal policy and that, framed in this way, his relief is prospective. *Id.* I agree with defendants. Accordingly, the Court GRANTS defendants' motion to dismiss and dismisses the entirety of plaintiff's suit with prejudice.

**A. Title II of the ADA.**

Title II of the ADA states that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132; *see Guttman v. Khalsa*, 669 F.3d 1101, 1108 (10th Cir. 2012).  As the Tenth Circuit has explained, to have a viable claim under Title II a plaintiff must establish:

> (1) that he or she is a qualified individual with a disability;
>
> (2) that he or she was either excluded from participation in or denied the benefits of some public entity's services, programs, or activities, or was otherwise discriminated against by the public entity; and
>
> (3) that such exclusion, denial of benefits, or discrimination was by reason of the plaintiff's disability.[3]

*J.V. v. Albuquerque Pub. Sch.*, 813 F.3d 1289, 1295 (10th Cir. 2016) (quoting *Gohier v. Enright*, 186 F.3d 1216, 1219 (10th Cir.1999)).  "Based on the second element, courts have recognized two types of claims: (1) exclusion from or denial of benefits and (2) discrimination." *Id.* (citation omitted).

Although he does not explicitly label his claim as such, plaintiff alleges that defendants "discriminated" against him in violation of Title II because defendants failed to reasonably accommodate his disabilities.  *See id.* (explaining that there are three ways to establish discrimination in violation of Title II, one of which is by showing that a defendant failed to make

---

[3] Defendants do not appear to dispute the first element of whether plaintiff is a "qualified individual with a disability" for purposes of their motion to dismiss. *See generally* ECF No. 18.  Instead, their arguments focus on whether or not plaintiff was "discriminated against" when defendants denied plaintiff's request for readmission.

5

a reasonable accommodation for one's disability) (citations omitted).[4] Thus, to have a viable claim and survive dismissal, plaintiff must establish that he requested a reasonable accommodation that was denied, or that the need for a reasonable accommodation "was obvious" and defendants subsequently failed to provide one. *See id.* at 1299.

What constitutes a request for a "reasonable accommodation" is a mixed question of law and fact. *See Osborne v. Baxter Healthcare Corp.*, 798 F.3d 1260, 1267 (10th Cir. 2015). However, the Tenth Circuit has explained that, at least in the employer-employee context, a request for relief that amounts to "retroactive leniency" for an employee's past misconduct, even if that misconduct resulted from the employee's alleged disability, is not a request for a reasonable accommodation as a matter of law. *See Dewitt v. Sw. Bell Tel. Co.*, 845 F.3d 1299, 1316 (10th Cir. 2017) (citing *Davila v. Quest Corp., Inc.*, 113 F. App'x 849, 854 (10th Cir. 2004)); *see also, e.g.*, *Halpern v. Wake Forest Univ. Health Scis.*, 669 F.3d 454, 465–466 (4th Cir. 2012) (concluding that a request for readmission after a student was dismissed for unprofessional acts was "not a disability accommodation, but a second chance" and that denial of such a request was "not a cause of action under the ADA") (internal quotation marks omitted).

Thus, in *Dewitt*, the Tenth Circuit rejected a diabetic employee's claim against her employer under the Americans with Disabilities Amendments Act of 2008 ("ADAAA") because it found that the "accommodation" the employee requested—reinstatement after being fired—was really a request to require the employer to excuse the plaintiff's prior misconduct—i.e., dropping calls as an operator at a call center. *Dewitt*, 845 F.3d at 1316. Even though the Tenth Circuit recognized that the employee's "misconduct" may very well have been caused by her disability (e.g., missing calls when suffering from drops in blood sugar), the court nevertheless

---

[4] Title II technically uses the phrase "reasonable modification" instead of "reasonable accommodation," but the Tenth Circuit has explained that these two standards are identical. *See Robertson v. Las Animas Cnty. Sheriff's Dep't*, 500 F.3d 1185, 1195 n.8 (10th Cir. 2007).

explained that her request for reinstatement failed because it was not a request for her employer to "accommodate concerns regarding the *possibility* of dropped calls" caused by her disability. *Id.* (emphasis added). Instead, it was merely a claim for "retroactive leniency" that could not amount to a reasonable accommodation under the ADAAA because such relief must always be "prospective." *Id.* at 1316; *see also Dewitt v. Sw. Bell Tel. Co.*, 41 F. Supp. 3d 1012, 1021 (D. Kan. 2014), *aff'd*, 845 F.3d 1299 (10th Cir. 2017) (collecting decisions by other circuits coming out the same way).

    **B. A Request to Excuse Past Poor Academic Performance, Even When that Poor Performance was Caused by a Disability, is not a Request for a "Reasonable Accommodation" Under the ADA.**

Here, I find that the reasoning behind the Tenth Circuit's employment "misconduct" precedent should apply, and that plaintiff's suit must therefore be dismissed. While plaintiff is not a former employee seeking reinstatement after being fired for misconduct, the relief he requested—readmission as a fourth-year medical student after being dismissed for poor performance—nevertheless amounted to a request for the same thing: "excusal" for past events and a second (or here, third) chance to do it over again. *See* ECF No. 1 at ¶¶21, 30. Because such a request was necessarily for "retroactive" relief rather than for "prospective" relief, it was not a request for an accommodation. *See Dewitt*, 845 F.3d at 1316. Defendants' denial of it cannot therefore serve as a basis for a discrimination suit under the ADA as a matter of law. *See id.* ("Ms. DeWitt's accommodation claim fails because she did not request a reasonable accommodation to address concerns regarding the possibility of dropped calls; instead, she requested retroactive leniency for her misconduct."); *Davila*, 113 F. App'x at 854 ("[E]xcusing workplace misconduct to provide a fresh start/second chance to an employee whose disability could be offered as an after-the-fact excuse is not a required accommodation under the ADA.").

A comparison of what plaintiff *might* have requested as an "accommodation" versus what he did in fact request further proves the point. It was not as if plaintiff, while a student at the University, requested that the school, for example, allow him to take classes offered later in the day because of his insomnia, or that it give him access to quieter study rooms because of his anxiety. Those requests are "accommodations," the reasonableness of which might be a fact question. By contrast, here, after he was already given a second chance to retake the clinical courses, plaintiff claims that he requested that the University ignore his past poor academic performance and reinstate him as a student, *id.* at ¶39. Such a request, however, is not so much an *accommodation* of a disability as it is an *absolution* for problems caused by one.[5]

Reaching that conclusion, I find plaintiff's attempts to side-step this outcome semantically by recasting his claim as one for "prospective" relief unpersuasive.[6] No matter how you slice it, the relief plaintiff requested and now seeks through this action is retrospective in nature. Plaintiff wants the University to give him another chance by readmitting him as a fourth-year student, thereby excusing the failing grades he received during his clinical courses several years ago. Thus, while plaintiff now claims that his relief is prospective because he sought to

---

[5] If a request for readmission constituted a request for a reasonable accommodation, it is unclear to me how a university, or an employer for that matter, could ever terminate someone for poor performance or misconduct allegedly caused by his or her disability without facing an ADA lawsuit. A disabled individual would always be able to make a request to retake an exam he or she failed, arguing that his or her disability caused the failing grade, and that a retest was therefore necessary to "accommodate" his or her disability. The ADA in my and the Tenth Circuit's estimation, however, was not designed to give disabled individuals a "second" or "third" chance. *See, e.g.*, *Davila*, 113 F. App'x at 854. Rather, it was meant to give disabled individuals a fair shot at a *first* chance.

[6] Although the bulk of plaintiff's complaint alleges that defendants failed to reasonably accommodate his disabilities by denying his request for readmission, plaintiff vaguely asserts at one point in his complaint that defendants' actions denied him "meaningful access to the benefit" of readmission. ECF No. 1 at ¶84. To the extent plaintiff argues that the University denied him the benefit of readmission because of his disability, which would be a separate cause of action, see *J.V.*, 813 F.3d at 1295, I find that plaintiff fails to state a claim upon which relief could be granted. As plaintiff's complaint makes clear, the University denied him this "benefit" because of his poor performance, not because of his disability. *See, e.g.*, ECF No. 1 at ¶¶33, 55; *JL*, 165 F. Supp. 3d at 1073 (explaining that, to state a claim under Title II, "a plaintiff must allege that . . . (3) such . . . denial of benefits . . . was by reason of a disability").

compel the University to grant him a variance from its dismissal policy going forward, his claim necessarily relies on events that occurred in the past and requires that the University overturn decisions it made previously. His argument on this point is therefore no more persuasive than would be a similar argument by a terminated employee that reinstatement is also somehow prospective because it amounts to a "variance" from an employer's termination procedures or its decision to fire that employee. *See, e.g.*, *Dewitt*, 845 F.3d at 1316.

Similarly, I do not find the cases from outside this jurisdiction that plaintiff cites to in his brief should dictate a different outcome here. Those cases did not decide the central issue presented in this case: can a request for readmission by a student dismissed for poor academic performance constitute a request for a "reasonable accommodation?" *See, e.g.*, *Garcia v. State Univ. of N.Y. Health Scis. Ctr. at Brooklyn*, No. CV 97-4189 (RR), 2000 WL 1469551, at *8 (E.D.N.Y. Aug. 21, 2000), *aff'd sub nom. Garcia v. S.U.N.Y. Health Scis. Ctr. of Brooklyn*, 280 F.3d 98 (2d Cir. 2001) (deciding whether the conditions within a school's offer of readmission were "a subterfuge for discrimination"); *see Doe v. New York Univ.*, 666 F.2d 761, 767–68 (2nd Cir. 1981) (deciding at the summary judgment stage whether a former student had been denied readmission "solely" because of her disability). By all indications, Tenth Circuit precedent strongly suggests the answer to that question is "no." *See Dewitt*, 845 F.3d at 1316; *Davila*, 113 F. App'x at 854. Accordingly, I find that dismissal of plaintiff's suit under Title II of the ADA is warranted.

## ORDER

For the reasons above, the Court GRANTS defendants' motion to dismiss [ECF No. 18] and dismisses plaintiff's suit with prejudice. As the prevailing party, defendants are awarded their reasonable costs pursuant to Fed. R. Civ. P. 54(d)(1) and D.C.COLO.LCivR 54.1.

DATED this 15th day of March, 2017.

BY THE COURT:

_____

R. Brooke Jackson  
United States District Judge